**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

GENEVA JANWAY, as Personal Representative )
of the ESTATE OF AARON JANWAY, )
                                         )
                 Plaintiff, )
                                         )
v.                                         )       Case No. 23-CV-335-RAW-DES
                                         )
LEFLORE COUNTY DETENTION CENTER )
PUBLIC TRUST, et al., )
                                         )
                 Defendants. )

**<u>OPINION AND ORDER</u>**

This matter comes before the Court on Plaintiff, Geneva Janway, as personal representative of the Estate of Aaron Janway's ("Plaintiff") Motion for Sanctions against Defendants James Melson, Laura Deihl, Khristian Case, Michael Tomlin, and Ty Woolery ("Individual Defendants") and Leflore County Detention Center Public Trust ("LCDCPT") (collectively "Defendants") pursuant to Fed. R. Civ. P. 37. (Docket No. 136). On July 17, 2024, United States District Judge Ronald A. White referred this case to Magistrate Judge D. Edward Snow for all pretrial and discovery matters, including dispositive motions, pursuant to 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72. (Docket No. 68). For the reasons set forth below, Plaintiff's Motion for Sanctions is DENIED.

### I.    Background

Plaintiff brings this Motion for Spoliation Sanctions against Defendants for failing to preserve and/or purposely deleting video from LeFlore County's CCTV from December 15, 2021, that would have shown Aaron Janway's deterioration in the shower area. (Docket No. 136 at 4). Plaintiff argues that despite deposition testimony and declarations that the video of the incident was preserved, and despite Plaintiff formally demanding preservation of all jail video, defense

1

counsel has asserted the video does not exist. *Id.* Plaintiff's Motion asserts that on December 15, 2021, Aaron Janway collapsed while in custody at the LeFlore County Detention Center. *Id.* at 6. Mr. Janway "was moved to the booking-area shower and later required CPR before EMS entry." *Id.* Plaintiff argues the "CCTV would have objectively captured the sequence that most matters to liability—cell checks, staff response as he deteriorated, duration on the shower floor, timing of medical summons, and any force used." *Id.* Defendant LCDCPT argues all this information can be obtained through other discovery, including firsthand eyewitness accounts, recordings taken by phone, written communications, and sworn statements. (Docket No. 166 at 11).

## II.    Analysis

Plaintiff seeks sanctions pursuant to Fed. R. Civ. P. 37 and the inherent authority of the Court. Under Fed. R. Civ. P. 37(e):

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> > (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> >
> > (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> >
> > > (A) presume that the lost information was unfavorable to the party;
> > >
> > > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> > >
> > > (C) dismiss the action or enter a default judgment.

Rule 37(e) thus requires the following three-part analysis:

> The first is to decide if the rule applies at all – that is, if a party failed to take 'reasonable steps' to preserve [ESI] 'that should have been preserved in the anticipation or conduct of litigation.' Fed. R. Civ. P. 37(e). If so, then the second step is to decide if there has been 'prejudice to another party from loss of the

2

information,' in which case the Court 'may order measures no greater than necessary to cure the prejudice.' Fed. R. Civ. P. 37(e)(1). Lastly, the third step to consider – regardless of prejudice to any other party – is whether the destroying party 'acted with the intent to deprive another party of the information's use in the litigation,' in which event a court may consider whether to impose the most severe of measures such as mandatory presumptions or instructions that the lost information was unfavorable or the entry of default judgment.

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 494 (S.D.N.Y. 2022) (quotation omitted); *see also Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007) ("A spoliation sanction is proper where (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence.") (citation omitted)).

### a. Individual Defendants

Plaintiff's Motion for Sanctions does not specifically allege which of the Defendants allegedly lost the video evidence and seeks sanctions against all Defendants together. However, the Individual Defendants argue that it is uncontroverted that "Defendants Deihl, Tomlin, and Case were never in possession or control of the purported video, and Defendants Melson and Woolery did, in fact, preserve the video." (Docket No. 165 at 6). Therefore, when analyzing potential sanctions against the Individual Defendants the Court must first determine whether they failed to take reasonable steps to preserve the ESI. Plaintiff does not make any argument, nor does she present any evidence indicating that Defendants Deihl, Tomlin, and Case should have, or even could have, preserved the video. In fact, the record indicates that Defendants Deihl, Tomlin, and Case did not possess, control, or maintain the jail videos. "[F]ederal district courts have concluded that 'spoliation sanctions are only available against the party who had possession or control of the missing evidence.'" *Bush v. Bowling*, No. 19-CV-00098-GKF-FHM, 2020 WL 5423986, at *7 (N.D. Okla. Sept. 10, 2020)(quoting *Storey v. Effingham Cnty.*, No. CV-415-149, 2017 WL

2623775, at *2 (S.D. Georgia June 16, 2017). In *Storey*, the Court differentiated between defendants who had control over the evidence versus those who did not. *Storey,* 2017 WL 2623775 at *2-3. The Court found that the Rule 37(e) multi-step analysis for determining whether spoliation sanctions are appropriate should only be applied to the defendants who had control over the video evidence. *Id*. at *3. Since the record before this Court shows that Defendants Deihl, Tomlin, and Case did not have control over the video evidence, sanctions cannot be taken against them as the alleged loss of evidence was outside of their possession or control.

As for Defendants Melson and Woolery, the record indicates they each took reasonable steps to preserve the video evidence. Defendant Melson believed that he "preserved the video through the jail surveillance system so that the footage would not be automatically overwritten." (Docket No. 165 at 13). Furthermore, at the request of the LeFlore County Sheriff's Office, Defendant Woolery made a copy of the video onto a CD and saved a copy to his desktop computer at the jail. *Id.* "At the time James Melson left his employment in the jail on March 10, 2022, he presumed the jail video was still preserved, since he did not delete it and is not aware of anyone else deleting it. (Exhibit 1: Declaration of James Melson, ¶¶ 3, 5). Similarly, at the time that Ty Woolery left his employment at the jail, he believed the copy he saved on his desktop computer was still preserved. (Exhibit 2: Declaration of Ty Woolery, ¶5)." *Id.*

Therefore, when determining whether Fed. R. Civ. P. 37(e) applies to Defendants Melson and Woolery, the question is whether they "failed to take 'reasonable steps' to preserve [ESI] 'that should have been preserved in the anticipation or conduct of litigation." *In re Keurig,* 341 F.R.D. at 494. Plaintiff notes "[Defendant Melson] saved the video because it was a 'major incident' and ensured it was still saved three months later." (Docket No. 136 at 7). Furthermore, Plaintiff acknowledges "[Defendant] Woolery declares [ ]he was asked by Officer Paul Moss to burn a copy

of the incident video to a CD, that [ ]he did so and left it for him, and that [ ]he also saved a copy of the incident video to h[is] desktop computer in the Administrator's Office." (Docket No. 167 at 5). The Individual Defendants also agree "Defendants Melson and Woolery properly preserved the jail video such that it was still preserved at the time they each left their employment with LCDC." (Docket No. 165 at 13). Plaintiff does not argue that Defendants Melson or Woolery failed to take reasonable steps to preserve the video; therefore, Fed. R. Civ. P. 37(e) does not apply to them. Accordingly, Plaintiff's Motion for Sanctions against the Individual Defendants is DENIED.

### b.  Leflore County Detention Center Public Trust

LCDCPT argues that the video evidence Plaintiff seeks was never actually saved or preserved. For spoliation "sanctions to be appropriate, it is a necessary . . . condition that the sought-after evidence actually existed and was destroyed." *Farella v. City of New York,* Nos. 05 Civ. 5711 & 05 Civ. 8264 (NRB), 2007 WL 193867, at *2 (S.D.N.Y. Jan. 25, 2007); *see also La Belle v. Barclays Cap. Inc.*, 340 F.R.D. 74, 82 (S.D.N.Y. 2022) (explaining that "a party seeking spoliation sanctions must necessarily show that the evidence at issue actually existed"). In order to determine whether the video had been saved, LCDCPT sought a brief extension of its response deadline to allow technical personnel to complete an examination of "recently discovered Avigilon-configured workstation computers and related data-storage components. That examination . . . confirmed that no surveillance video files or exported footage were stored locally on any of the examined machines." (Docket No. 166 at 6). LCDCPT argues that despite "Mr. Melson's testimony regarding 'saving' footage, that testimony does not establish that any footage was exported or properly bookmarked and locked, does not identify the scope of what was allegedly preserved, and does not establish continued availability months later." (Docket No. 166 at 9). The Court disagrees. Defendant Melson declares he accessed the jail video monitoring

software and preserved/saved the video by selecting cameras and a time frame, clicking "preserve or save," and renaming files; and that when he left on March 10, 2022, he believed the video was still preserved in the system. (Docket No. 165-1). Furthermore, Defendant Woolery declares he was asked by Officer Paul Moss to burn a copy of the incident video to a CD, that he did so and left it for him, and that he also saved a copy of the incident video to his desktop computer in the Administrator's Office. (Docket No. 165-2). He further swears that when he left employment on September 30, 2022, "the jail video was still saved to my desktop." *Id*. LCDCPT does not explain how Defendant Melson's failure to follow the preservation procedures, which may have led to the video being erased, also explains Defendant Woolery's declaration that he made a copy of the video to both a CD and his desktop. Based on the testimony presented, the Court cannot find that the video was not preserved by Defendants Melson and/or Woolery as LCDCPT would suggest. The Court must next determine whether LCDCPT took reasonable steps as required under Rule 37(e) once it became aware of Plaintiff's preservation letter.

Plaintiff argues that after being placed on explicit notice to preserve "all" surveillance on March 29, 2022, LCDCPT permitted the footage that had been saved to disappear. (Docket No. 136 at 12). While LCDCPT maintains that the footage was never actually saved, therefore there was nothing to preserve; it also argues "Rule 37(e) does not impose strict liability for the design or retention limitations of surveillance systems, nor does it require institutions to preserve footage beyond a system's defined retention period absent an affirmative preservation step." (Docket No. 166 at 10). The Court finds that LCDCPT had a duty to preserve the video and failed to do so; however, there is no evidence that Plaintiff is prejudiced by this loss as there is sufficient evidence to believe the information contained on the video is available through discovery.

6

Plaintiff argues the "video is the most objective evidence of what matters most" in this lawsuit, including whether "staff perform[ed] checks when required? How long did they leave Mr. Janway unattended? When was medical actually notified? How quickly did EMS gain entry once called?" (Docket No. 136 at 13). However, as Defendants point out, "Plaintiff is already in possession of significant portions of video which was taken by former jail employee, Tabetha Prock." (Docket No. 165 at 17). Ms. Prock testified that while she was "in the tower, she used her personal cell phone to record videos of the jail video." *Id.* "In addition to the jail video, Plaintiff also has the testimony of Tabetha Prock, who testified under oath regarding her observations of Janway throughout his incarceration, as well as the events that allegedly transpired on December 15. Further, Plaintiff took the deposition of an inmate who also testified under oath regarding Janway's condition throughout his incarceration." *Id.* at 19. Courts have found that "because ESI often exists in multiple locations, spoliation occurs only where the information is truly lost and not recoverable elsewhere." *Bistrian v. Levi*, 448 F. Supp. 3d 454, 465 (E.D. Pa. 2020). Where the information can be restored or replaced through additional discovery, Rule 37(e)(1) does not permit a finding of prejudice. *EEOC v. JetStream Ground Servs., Inc.*, 878 F.3d 960, 965–66 (10th Cir. 2017); *see also Burlington,* 505 F.3d at 1032–33 (holding that denial of spoliation sanctions is appropriate absent meaningful evidence showing Plaintiff was actually, rather than merely theoretically, prejudiced.) Accordingly, while LCDCPT had a duty to preserve the video and failed to do so,[1] Plaintiff has failed to show prejudice since she has portions of the lost video and deposition testimony that describes the events that are the subject of this litigation.

---

[1] The Court will leave it to the trial judge to determine whether Plaintiff is allowed to argue to the jury that Defendants lost or failed to retain the video evidence.

### III.     Rule 37(e)(2)

Prejudice does not need to be found where the Plaintiff can show Defendants acted with intent to deprive the other party of the ESI. *In re Keurig*, 341 F.R.D. at 494. "Although Rule 37(e) does not define intent, courts have found that a party's conduct satisfies the intent requirement when the evidence shows or it is reasonable to infer . . .  a party purposefully destroyed evidence to avoid its litigation obligations." *Com. Resins Co., Inc. v. Carlson*, No. 19-CV-616-SEH-CDL, 2024 WL 3843598, at *11 (N.D. Okla. July 12, 2024) (quotation omitted). "[C]ourts require evidence of intentional destruction or bad faith before a litigant is entitled to a spoliation instruction . . . Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case." *Henning v. Union Pac. R.R. Co.,* 530 F.3d 1206,1220 (10th Cir. 2009) (quotation omitted). "Without a showing of bad faith, a district court may only impose lesser sanctions." *Turner v. Public Serv. Co. of Colorado*, 563 F.3d 1136, 1149 (10th Cir. 2009) (citing *Henning,* 530 F.3d at 1220).

In the present case, Plaintiff has failed to show that Defendants acted with the intent to deprive Plaintiff of the use of the video in this litigation. Defendant Melson attempted to save the video file but failed to follow the proper protected bookmarking procedure and the video was deleted by the system's automatic deletion. (Docket No. 166 at 16). As for the copy Defendant Woolery made, LCDCPT notes that its technical examination performed by Dale Black "confirms that no exported surveillance video existed on the workstations examined." *Id.* Furthermore, the alleged recipient of the copied CD, Sheriff Officer Paul Moss, testified that he never requested or received a copy of the video. (Docket No. 183 at 4 citing 183-3 at 3). While Plaintiff has pointed out many instances in which the video could have been saved and was not, there is no evidence to suggest the loss was anything other than negligence or the usual overwriting of video by the

recording program. Plaintiff fails to establish that Defendants acted in bad faith or with intent to deprive. Accordingly, Plaintiff's Motion for Sanctions is DENIED.

### IV.    Conclusion

The record establishes that Defendants Melson and Woolery took reasonable steps to preserve the December 15, 2021, surveillance footage, while Defendants Deihl, Tomlin, and Case neither possessed nor controlled the video and therefore cannot be sanctioned for its loss. Although the Court finds that the LeFlore County Detention Center Public Trust had a duty to preserve the footage and failed to do so after receiving notice of anticipated litigation, sanctions under Rule 37(e) are unwarranted because Plaintiff has not demonstrated that the loss of the video resulted in actual prejudice. Significant alternative evidence remains available, including partial video recordings, eyewitness testimony, sworn statements, and deposition testimony addressing the events at issue. Moreover, Plaintiff has failed to establish that any Defendant acted with the intent to deprive her of the video's use in litigation, as required for the imposition of adverse-inference or other severe sanctions under Rule 37(e)(2). At most, the evidence reflects negligence or inadvertent loss resulting from the surveillance system's retention processes, rather than bad faith or intentional destruction. Accordingly, Plaintiff's Motion for Sanctions (Docket No. 136) is hereby DENIED.

IT IS SO ORDERED this 24th day of June, 2026.

_____
D. Edward Snow
United States Magistrate Judge

9